IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LINDA J. ARTHUR,           )<br>                                          )<br>                                          ) CIVIL ACTION NO. 0:05-2042-CMC-BM<br>            Plaintiff,            )<br>                                          )<br>v.                                     ) **REPORT AND RECOMMENDATION**<br>                                          )<br>JO ANNE B. BARNHART     )<br>COMMISSIONER OF SOCIAL  )<br>SECURITY,                        )<br>                                          )<br>            Defendant.         )<br>_____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 23, 2001, alleging disability as of July 31, 2001 due to back injuries, arthritis, and diabetes. (R.pp. 52, 62, 273). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 4, 2004. (R.pp. 322-369). The ALJ thereafter denied Plaintiff's claims in a decision issued July 15, 2004. (R.pp. 21-27). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 7-9).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that



there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-eight (48) years old when



she alleges she became disabled, and fifty-one (51) years old on the date of the ALJ's decision, has a limited seventh grade education with past relevant work as a convenience store manager, cashier, mail clerk, driver, and file clerk. (R.pp. 52, 63, 68, 75). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform her past relevant work, she nevertheless retained the residual functional capacity to perform a limited range of sedentary work[1] and was therefore not disabled. (R.pp. 26-27).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating the evidence in determining Plaintiff's residual functional capacity and by finding that Plaintiff was not wholly credible. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

First, it is significant to note that Plaintiff stopped working in 1996, five years *before* her alleged disability onset date. In her disability application, Plaintiff indicated that she could no

---

[1] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

3



longer stand for long periods, but in response to the question "Why did you stop working?", Plaintiff wrote "[d]ue to taking care of my children." (R.p. 62). The medical record also indicates that Plaintiff had lumbar laminectomy surgeries for herniated discs in 1986 and 1996, well before her alleged disability onset date, and was already on a lifting restriction. See (R.pp. 109-114, 120). Plaintiff's alleged disability onset date of July 31, 2001 is based on her having been hit by an automobile on that date. (R.p. 120).

The medical record reflects that, following this accident, no fractures were found on examination and Plaintiff was referred to neurosurgeon Dr. William Meeks. (R.p. 120). Plaintiff presented to Dr. Meeks for an evaluation on August 9, 2001. (R.p. 193). A myelogram revealed degenerative disc disease and a bilateral defect at L4-5 in the area of Plaintiff's prior surgeries and a bony defect at C4-5, confirmed by a CT scan along with stenosis at L3-4. (R.pp. 120, 207-209). X-rays showed spurring and narrowing at C4-5, with no significant disc herniation, and Dr. Meeks prescribed some medications for Plaintiff to take. (R.pp. 193, 200). Plaintiff thereafter continued to see Dr. Meeks, and he ultimately recommended that Plaintiff have surgery on her neck. (R.pp. 120, 189-192). Plaintiff had surgery on October 1, 2001, and post operatively had no radicular arm pain. (R.pp. 120-131, 133). X-rays taken on November 14, 2001 showed that Plaintiff's plate and screws were in good stable position, with minimal narrowing at C4-5 and mild spondylitic change at C5-6 and C6-7. (R.pp. 139-140). Dr. Meeks eventually discontinued seeing Plaintiff after she became "asymptomatic". (R.p. 158).[2]

---

[2] It is not clear when Dr. Meeks stopped seeing the Plaintiff. Medical records show that he saw her on December 6, 2001, nine weeks after her surgery, at which time she was "doing well", although she later apparently had some difficulty with swallowing. (R.pp. 186-187). After her discharge from his care, Dr. Meeks did not see Plaintiff again until she returned to see him in August of 2002. (R.pp. 158-162).

4



On March 11, 2002, Dr. Gerald Fisher reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment. Dr. Fisher opined that Plaintiff could perform light work[3] with limitations of only occasional climbing of ramps and stairs, and no climbing of ropes or scaffolds. (R.pp. 244-251). On November 27, 2002, Dr. George Chandler reviewed Plaintiff's records to assess her physical residual functional capacity, and he also found that Plaintiff could perform light work with limitations, to wit: occasional use of the left lower extremity for pushing and pulling; occasional climbing of ladders/ropes/scaffolds, stooping and crouching; and no constant gripping and fingering with the left hand. (R.pp. 235, 242).

In the meantime, Plaintiff had returned to Dr. Meeks in August 2002 complaining of numbness in her left arm and hand. An EMG revealed carpal tunnel syndrome in her left arm and hand with no evidence of radiculopathy. Plaintiff also had stenosis in her lumbar spine and defect at C6-7. (R.p. 158). Plaintiff underwent an anterior diskectomy and fusion at C6-7 on October 30, 2002, which went "well". Dr. Meeks noted that Plaintiff continued to have some carpal tunnel symptoms of the left hand; (R.p. 159); but by November 14, 2002, Plaintiff's left arm pain was "gone". (R.p. 184). Subsequent MRI's and EMG's performed in late 2003 continued to show post surgical changes, confirming that Plaintiff had a degenerative condition, and Plaintiff was prescribed medications for her condition. (R.pp. 264, 270). An examination by Dr. Meeks on February 5, 2004 revealed that sensation in Plaintiff's lower extremities was normal, although she exhibited decreased sensation in her left arm secondary to neck problems. A motor examination was negative. (R.p. 269).

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



With respect to her diabetes, Plaintiff was treated for this condition by Dr. James Bland. Dr. Bland diagnosed Plaintiff with non-insulin-dependant diabetes and peripheral neuropathy of the right leg with sciatica, and regulated her diabetes with medications. There is no indication in Dr. Bland's records that Plaintiff's diabetes condition was disabling. See generally, (R.pp. 144-148, 264-267). See also (R.pp. 108-118). The record further reflects that Plaintiff received Zoloft for depression, which has been diagnosed as non-severe producing at most only mild limitations. See generally, (R.pp. 109, 221, 224, 231, 252-263).

After review of this medical record and consideration of the subjective testimony offered at the hearing, the ALJ determined that Plaintiff's left carpal tunnel syndrome, arthritis, status-post lumbar and cervical surgeries, and chronic neck and back pain were severe impairments which prevented Plaintiff from performing the exertional requirements of her past relevant work. (R.pp. 23, 26-27, 357-358). However, the ALJ further concluded that Plaintiff's condition was not so severe as to prevent her from performing sedentary work with an ability to

> stand and/or walk for a total of up to two hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight-hour work day; in addition, she is to have the option to alternate between sitting and standing at least every 40 minutes; she is to avoid all crawling, climbing, balancing, reaching overhead, rotation or extension of the neck, and constant repetitive fine dexterity or gripping with the dominant left hand; and she is to avoid more than occasional stooping, twisting, crouching or kneeling.

(R.p. 25).

The medical records cited hereinabove provide substantial evidence to support the ALJ's findings and conclusions that Plaintiff had *at least* this functional capacity. Specifically, the records and opinions expressed by Dr. Meeks and Dr. Bland support this conclusion; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment

6



of an examining physician]; as do the opinions of Dr. Fisher, Dr. Chandler, Dr. Lisa Varner and Dr. Xanthia Harkness.[4] See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. Significantly, none of these physicians ever opined that Plaintiff was totally disabled from any work activity. Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) [simply because working might cause discomfort does not mandate a finding of disability]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability].

        In finding that Plaintiff's subjective allegations as to the severity of her limitations were not supported by the evidence, the ALJ specifically noted that Plaintiff's own testimony was inconsistent with the weight of the medical evidence, particularly pointing out Plaintiff's testimony as to her limitations and that her various medications make her drowsy when there was no mention in the medical record of side effects to her medications and no complaints in the records of her inability to stand or lift, or to otherwise support the degree of limitations described by the Plaintiff. (R.p. 24). The ALJ also noted that Plaintiff's husband had appeared and testified at the hearing. (R.p. 21). While Plaintiff complains that more discussion of her husband's testimony was not included in the decision, the fact that the ALJ did not detail Plaintiff's husband's testimony in his decision is not

---

[4] Dr. Varner and Dr. Harkness assessed Plaintiff's depression as resulting in at most mild symptoms. See generally, (R.pp. 221-231, 252-263).



a basis to overturn the decision. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) [failure to explain reasons for rejecting testimony of claimant's spouse did not require reversal of the decision]; *cf.* Standlee v. Barnhart, 125 Fed.Appx. 938, 941 (10th Cir. 2005) ["While the ALJ did not specifically discuss the testimony of [Plaintiff's] mother, we do not believe this omission is grounds for remand given the nature of the mother's testimony, which appears largely cumulative of [Plaintiff's] own testimony"]; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996) ["We decline claimant's invitation to adopt a rule requiring an ALJ to make a specific written finding on each witness's credibility...."]. Plaintiff's husband's testimony was largely cumulative of Plaintiff's testimony, which the ALJ properly analyzed. The ALJ also thoroughly discussed the treating physicians' opinions and other aspects of the medical record in discounting Plaintiff's credibility.

The ALJ's consideration and discussion of his findings with respect to Plaintiff's RFC is sufficient to comply with SSR 96-7p and 20 C.F.R. § 404.1529, which require consideration of the entire record in reaching a decision, and the undersigned can therefore find no reversible error in the ALJ's consideration of Plaintiff's subjective testimony when considered in conjunction with the other evidence of record. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; see Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective

8



evidence]; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) [fact that claimant stopped working for reasons unrelated to disability inconsistent with allegations of inability to work].

Finally, the Commissioner acknowledges that the hypothetical presented to the vocational expert at the hearing by the ALJ is worded differently than the restrictions set forth in the decision; see (R.pp. 25, 358); but argues that if there is any discrepancy between the two, the hypothetical presented to the VE is actually more restrictive than the wording of the restrictions as contained in the written decision. The vocational expert testified that there were a significant number of jobs that Plaintiff could perform with the limitations noted in the hypothetical; (R.pp. 358-360); and the undersigned does not find any discrepancy in the wording of the hypothetical such as to require reversal of the decision. Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987) [an arguable deficiency in opinion writing is not cause for reversing the Commissioner]; Hurley v. Barnhart, 385 F.Supp.2d 1245, 1266-1267 (M.D.Fla. 2005) [case affirmed where the ALJ posed two additional hypotheticals that included limitations even more restrictive than the ALJ found supported by the evidence. The VE testified that Plaintiff could work under one of those hypotheticals and the ALJ therefore carried her burden of showing that Plaintiff could perform other work.], aff'd, 147 Fed.Appx. 103 (11th Cir. 2005).

Plaintiff's primary argument is that the ALJ's inclusion of "a sit/stand option such that the individual could sit for up to 30 or 40 minutes, stand up to 30 or 40 minutes" in the hypothetical dictates a standing requirement exceeding the two (2) hour limitation found by the ALJ in his decision. (R.pp. 25, 358). Although the ALJ could have worded the hypothetical more specifically, however, the undersigned does not agree with Plaintiff's conclusion that it affected the outcome in this case. The vocational expert testified that he had reviewed Plaintiff's file as it pertains to her

9



vocational profile and heard Plaintiff's testimony. (R.p. 356). *Cf.* Manley v. Barnhart, No. 04-3617, 154 Fed.Appx. 532 (7th Cir. 2005)["Although we agree that the hypothetical could have been more precisely worded, we disagree that this was fatal. We have repeatedly held that a hypothetical is not defective simply for failing to include each and every detail of the applicant's disability, provided there are indications that the VE reviewed the entire record prior to the hearing."](citations omitted). After being given the hypothetical by the ALJ, the vocational expert testified that Plaintiff could perform the jobs of desk clerk, counter attendant, and security monitor. In describing the job of "security monitor", the vocational expert agreed that that is "someone [who] sits in a room and watches a bunch of TV monitors". (R.p. 360). The vocational expert testified that you wouldn't have to be in one position and that you could change your body positions. (R.p. 361). This testimony does not reflect a requirement exceeding the two (2) hour standing limitation found in the decision. Hence, even if Plaintiff's argument were to be accepted, the undersigned does not find reversible error on this issue.

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

                                                    _____
                                                    Bristow Marchant
                                                    United States Magistrate Judge

Columbia, South Carolina

August   14,   2006

